FILED

2012 Jan-26  PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMY HATCHER MAYS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 11-G-0535-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Amy Hatcher Mays, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

2

(5)     whether the claimant is capable of performing any work in the
national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d

1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she

will automatically be found disabled if she suffers from a listed impairment.  If the

claimant does not have a listed impairment but cannot perform her past work, the burden

shifts to the Secretary to show that the claimant can perform some other job."  Pope, at

477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

        In the instant case, the ALJ, Kenneth Wilson, determined the plaintiff met

the first two tests, but concluded she did not suffer from a listed impairment.  The ALJ

found the plaintiff able to perform her past relevant work.  Accordingly, the ALJ found

the plaintiff was not disabled within the meaning of the Act.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

        It is common for a vocational expert ("VE") to testify at a claimant's

hearing before an ALJ, and in many cases such testimony is required.  The VE is typically

asked whether the claimant can perform his past relevant work or other jobs that exist in

significant numbers within the national economy based upon hypothetical questions about

the claimant's abilities in spite of his impairments.  "In order for a vocational expert's

testimony to constitute substantial evidence, the ALJ must pose a hypothetical question

which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229

(11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could

perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen,

831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a

claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff was 33 years old at the time of the ALJ's decision. She

graduated high school in special education. [R. 156-160]. The plaintiff's past relevant

work was as a cashier, file clerk and assembler/inspector in a windshield manufacturing

plant. [R. 43].  She claims disability beginning April 1, 2005.

The medical evidence of record includes treatment notes from David B.

Hall, M.D., beginning April 18, 2003.  Dr. Hall treated the plaintiff for hypertension and

depression, which he noted was stable on Zoloft 100 mg every day, and rhinitis. [R. 191-

192].  On September 4, 2003, Dr. Hall noted that Zoloft had helped her impulsive and

panic episodes, but suspected attention deficit/hyperactivity disorder. [R. 189].  On

December 5, 2003, Dr. Hall increased her Zoloft dosage from 100 mg to 200 mg every

day because her depression seemed to be worsening. [R. 188].  On February 19, 2004, the

plaintiff told Dr. Hall that she felt as if panic was "starting to creep back in," and wanted

to change from Zoloft, but Dr. Hall stated he would rather not change this unless

necessary, although he noted because cost of medications was a concern for the plaintiff,

he might prescribe generic Prozac. [R. 187].

On September 2, 2004, Dr. Hall observed that the plaintiff:

is under increased stressors as she is going through a divorce and is dealing
with an ill relative and, of course, she has a child with neurofibromatosis.

6

> She had taken herself off both the Zoloft and the Straterra because of difficulty in paying for the medication.

[R. 185].  By February 11, 2005, Dr. Hall started the plaintiff on Cymbalta, noting that

she suffers from occasional panic and anxiety. [R. 184].  On November 14, 2005, Dr. Hall

continued his diagnosis of depression and anxiety, and thought that the plaintiff would

need to try antidepressants that were not benzodiazepines. [R. 183].  By November 21,

2006, the plaintiff was complaining of severe mood fluctuations to Dr. Hall, which she

described as manic mood with impulsive activity such as shopping. [R. 182].  Dr. Hall

noted that she had tried multiple antidepressants, "none of which have been particularly

helpful, particularly with the manic phase of her illness."  Id.  Dr. Hall diagnosed

probable bipolar disorder, continued her on Klonopin and started her on Zyprexa.  He

suggested that she see a psychiatrist, but the plaintiff stated she could not afford it, and

her father, who was helping her financially, would not allow her to see a psychiatrist.  Id.

On January 4, 2007, Dr. Hall noted that Zyprexa was working "fairly well,

but she has gained an enormous amount of weight and she says the cost of the drug is

becoming prohibitive." [R. 237].  Dr. Hall changed her medications to a combination of

Zoloft and Cymbalta, and continued her diagnosis of depression and anxiety with possible

bipolar disorder.  Id.

On January 31, 2007, John Neville, Ph.D., examined the plaintiff at the

behest of the Commissioner for a psychological evaluation.  Dr. Neville performed a

mental status examination, and estimated her intellectual functioning as borderline to low

average range. [R. 198].  His diagnostic impression was major depressive disorder,

recurrent, mild, generalized anxiety disorder,[1] and borderline intellectual functioning,

provisional. [R. 199].  Dr. Neville noted:

> Short-term memory appeared mildly impaired.  Her ability to carry out
> instructions was considered mildly to moderately impaired.  Ms. Mays'
> ability to respond appropriately to coworkers appeared moderately impaired
> due to her mood and anxiety disorder.  Her ability to cope with ordinary
> work pressures was considered moderately impaired.

Id.  Dr. Neville's prognosis was that "[p]sychiatric treatment and psychotherapy are

recommended for Ms. Mays.  Perhaps most helpful though would be some changes in her

environment to reduce her stress.  Her psychological prognosis over the next six to twelve

months is considered fair."  Id.

On February 2, 2007, the plaintiff told Dr. Hall that she was still very

depressed despite her treatment. [R. 236].  Dr. Hall noted on March 2, 2007, that her

depression was under much better control, but her anxiety level continued to be an issue.[2]

[R. 235].  By June 1, 2007, Dr. Hall stated that her generalized anxiety symptoms had

worsened, making it harder for her to concentrate and perform her activities of daily

living. [R. 234].  He switched her medication from Zoloft to Pexeva, and wanted a

---

[1]  Dr. Neville did not state the severity of the plaintiff's generalized anxiety
disorder.

[2]  The plaintiff told Dr. Hall that "she visibly shakes in her upper extremities at
times because of anxiety problems." [R. 235].

psychiatrist to see her, but noted the plaintiff's financial situation may prevent her from affording such special care, as she was having trouble affording her medication. [R. 234].

On August 29, 2007, treating psychiatrist Roberto Norniella, M.D., diagnosed major depressive disorder. [R. 223].  On October 1, 2007, Dr. Norniella noted that she was still depressed and she reported to him that she heard a voice telling her to hurt herself several months ago. [R. 222].   On November 1, 2007, she returned to Dr. Hall to report that she was not sleeping well and was lightheaded:

> She has been off of medications except for lithium, Lopressor, and Klonopin.  She feels stressed and depressed.  Lithium does seem to be helping her, however.  She has problems affording Cymbalta even though it had helped.

[R. 233].  Dr. Hall added Prozac, as "it is generic I think we can get by with that."  Id.

On December 3, 2007, Dr. Norniella completed a Supplemental Questionnaire as to Residual Functional Capacity.  He thought that the plaintiff would have a marked restriction in activities of daily living and maintaining social functioning. [R. 220].  Dr. Norniella estimated she would have marked deficiencies in concentration, persistence or pace resulting in a frequent failure to complete tasks in a timely manner, and in her ability to respond to customary work pressures.  Id.  He also thought she would have a marked impairment in her ability to understand, carry out and remember instructions in a work setting.  Id.  However, he did not expect her limitations to last for 12 months or longer. [R. 221].  Side effects from her medications would be "some sedation."

Id.  Treatment notes from January 2, 2008, indicate that the plaintiff was experiencing

increased symptoms of attention deficit disorder. [R. 225].

On February 1, 2008, Dr. Hall noted:

> Ms. Mays comes in to follow up on her depression.  She continues having
> problems with stress and daytime fatigue.  She has seen a psychiatrist and
> psychologist.  They have ruled out bipolar disorder.  She has been told by
> them that she does have ADD.  She confirmed that she has always had
> problems ordering her thoughts and staying with a plan.  She will get
> multiple projects started and cannot finish any of them.  She has had
> significant difficulties staying on task, and she says she cannot remember
> things that she has read and she re-reads the same page over and over trying
> to remember what she read.  For this reason, she very much wants to get on
> something to help her with her ADD.  We had tried Strattera, but because of
> cost, she could not afford it.  She says the only thing that she could possibly
> afford would be generic Ritalin.

[R. 232].  Dr. Hall stated that her depression was "well controlled thus far with her

Prozac."  Id.   On August 4, 2008, Dr. Hall stated that she was "doing a little bit better

from a mood standpoint," although the plaintiff had to stop Prozac because of irritability.

[R. 230].

However, on December 10, 2008, the plaintiff's attorney requested that Dr.

Norniella complete another Supplemental Questionnaire.  This undated report was

received by the plaintiff's attorney on December 31, 2008. [R. 245].  Dr. Norniella opined

that the plaintiff would have marked impairments in maintaining social functioning,

marked deficiencies of concentration, persistence or pace resulting in frequent failure to

complete tasks in a timely manner, a marked impairment in her ability to respond to

customary work pressures, a marked impairment in her ability to understand, carry out

and remember instructions in a work setting, and a marked impairment in performing

repetitive tasks in a work setting. [R. 245-246].  This time, Dr. Norniella expected her

limitations to last for 12 months or longer. [R. 246].

On February 5, 2009, the plaintiff complained to Dr. Hall of decreased

energy and difficulty maintaining mental focus.  Dr. Hall said, "Because of her health

issues and requiring doctor visits, plus her children, she, just this week, has had to miss 3

days of work.  To be able to hold down a regular job is becoming increasingly difficult

and she is seeking disability." [R. 247].  However, the plaintiff's attorney explained at the

ALJ hearing that "she was actually at vocational rehab and the Easter Seals Program

doing something that I think the doctor probably understood to be work but it was

vocational rehab as I understand." [R. 30].

Finally, on May 2, 2009, Dr. Norniella completed a third Supplemental

Questionnaire in which he stated that the plaintiff would have a marked impairment in

maintaining social functioning, and a marked impairment in her ability to respond to

customary work pressures. [R. 248].  Again, Dr. Norniella thought that the plaintiff's

impairments would last for 12 months or longer. [R. 249].

At the plaintiff's ALJ hearing, Dan Kinard, a vocational expert, was

questioned about the impact of Dr. Norniella's opinion.  He testified that if Dr.

Norniella's assessment was found to be correct, there would not be any jobs the plaintiff

would be able to perform. [R. 44-45].  Therefore, unless substantial evidence supports the

ALJ's refusal to credit the opinion from plaintiff's treating psychiatrist, Dr. Norniella, the

plaintiff is disabled within the meaning of the Social Security act.

Instead of relying on the opinion of the plaintiff's treating psychiatrist, the

ALJ chose to accord substantial weight to the opinions of the State agency medical

consultants who did not examine the plaintiff. [R. 22].  The ALJ rejected Dr. Norniella's

Supplemental Questionnaires which supported plaintiff's claim of disability:

> The Supplemental Questionnaire at Exhibit 11F is afforded no weight.
> (Note: Counsel argues that the signature appears to be Dr. Norniella's;
> however, this argument is given no weight.  The signatures are different.
> Furthermore, in Exhibit 7F, Dr. Norniella clearly indicated beneath his
> signature his name and title, as opposed to the blacked out information in
> Exhibit 11F which is also undated.

Id.

One important aspect of the Commissioners' duty to develop a fair and

complete record is his duty to recontact a claimant's treating physician.  The

Commissioner's regulations provide as follows:

> (e) Recontacting medical sources.  When the evidence we receive from your
> treating physician or psychologist or other medical source is inadequate for
> us to determine whether you are disabled, we will need additional
> information to reach a determination or a decision.  To obtain the
> information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or
> > other medical source to determine whether the additional information
> > we need is readily available.  We will seek additional evidence or
> > clarification from your medical source when the report from your
> > medical source contains a conflict or ambiguity that must be
> > resolved, the report does not contain all the necessary information, or
> > does not appear to be based on medically acceptable clinical and

> laboratory diagnostic techniques.  We may do this by requesting
> copies of your medical source's records, a new report, or a more
> detailed report from your medical source, including your treating
> source, or by telephoning your medical source.  In every instance
> where medical evidence is obtained over the telephone, the telephone
> report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e).

If the ALJ had some reasonable question as to whether Dr. Norniella

actually signed the Supplemental Questionnaire, he should have recontacted him to clarify

any ambiguity.  Instead, the ALJ decided to play "handwriting expert" in determining to

give Dr. Norniella's opinion no weight.  An ALJ is not free to base his decision on such

unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ

in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes
> his own uninformed medical evaluations for those of  claimant's treating
> physicians:  "Absent a good showing of cause to the contrary, the opinions
> of treating physicians must be accorded substantial or considerable weight
> by the Secretary."  Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).
> . . . An ALJ may, of course, engage in whatever idle speculations regarding
> the legitimacy of the claims that come before him in his private or personal
> capacity;  however, as a hearing officer he may not arbitrarily substitute his
> own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).

Dr. Norniella is both a treating physician and specialist in the field of psychiatry, and for these reasons his opinion is entitled to more weight in this area.[3]  The ALJ egregiously played both psychiatrist and handwriting expert.  This is a case that is completely dependent on a mental diagnosis from a psychiatrist, and for the ALJ to substitute his opinion for that of a specialist is error.

Although the ALJ recited reasons for rejecting Dr. Norniella's opinion, those reasons are not supported by substantial evidence.  Therefore, based upon the law of this circuit, Dr. Norniella's opinion must be accepted as true.  While the plaintiff's alleged onset date is April 1, 2005, substantial evidence supports the ALJ's decision that the plaintiff was not under a disability as defined in the Social Security Act through December 2008.  However, as of December 31, 2008,[4] substantial evidence does not support the ALJ's decision that the plaintiff was not under a disability.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be

---

[3]  "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist."  20 C.F.R. § 404.1527(d)5)

[4]  On this date, Dr. Norniella's Supplemental Questionnaire (Exhibit 11F) was received by the plaintiff's attorney.  [R. 245-246].

awarded benefits based upon an onset date of December 31, 2008, will be entered

contemporaneously herewith.

DONE and ORDERED 26 January 2012.


UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

15